UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                           :

AMERICAN SERVICE INSURANCE       :
COMPANY,                              :
                           Plaintiff,   :          11 Civ. 4664 (JPO)
                                    :
             -v-                 :       MEMORANDUM AND
                                    :          ORDER
FERDY REYES GARCIA, et al.,      :
                       Defendants.  :
                                    :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Plaintiff American Service Insurance Company ("ASI") brings this declaratory judgment

action, pursuant to 28 U.S.C. §§ 2201 and 1332, against Defendants Ferdy Reyes Garcia

("Garcia"); Christian Coronel, by his father Abel Coronel, and Abel Coronel individually

(together, "Coronel"); John Appelt III and John E. Appelt, Jr. (together, the "Appelts"); One

Beacon America Insurance ("Beacon"); Adirondack Insurance Exchange ("Adirondack");

Mathew Castro ("Castro"); Justina Soto ("Soto"); and Geico Insurance Companies ("Geico").

ASI seeks a determination of the rights and liabilities of each party associated with a motor

vehicle collision that occurred on August 23, 2008 in the State of New York.  Plaintiff ASI has

moved for summary judgment against all parties, seeking a declaration that rescission of its

insurance policy issued to Garcia is proper.  ASI has also moved for default judgment against

Garcia and Coronel.  For the reasons that follow, ASI's motions are granted.

I.      **Background**

     A.      **Factual Background**

The following facts are taken from ASI's Local Rule 56.1 statement and other submissions in connection with the instant summary judgment motion.  They are uncontested unless otherwise indicated.

ASI is an insurance company whose primary place of business is in Chicago, Illinois. ASI maintains a contractual relationship with OHS Insurance Agency/Specialty Insurance ("OHS"), located in Richmond, Virginia.  Pursuant to this agreement, OHS acts as ASI's agent and represents ASI while insuring ASI policies.  In acting as ASI's retail agent in August 2008, OHS was provided with underwriting guidelines associated with various types of insurance risks applicable to different policies.  With respect to personal automobile policies, ASI's underwriting guidelines required that applicants reside in Virginia for at least ten months out of the year in order to be eligible for coverage.  In other words, OHS—on behalf of ASI—was not authorized to issue ASI personal automobile insurance policies to non-Virginia residents.

On August 4, 2008, one of OHS's insurance agents, non-party Adrian M. Gonzalez, issued a personal auto insurance policy, numbered 03-145459-00 ("the Policy"), to Garcia. (ASI's Memorandum in Support, Dkt. No. 72 ("ASI Mem."), Ex. 1 ("Rodriguez Dep."), at Ex. 1.)  On the policy, Garcia listed his address as 4657 Southwood Pkwy., Apt. B, Richmond, VA 23224.  Garcia provided his Guatemalan driver's license, along with a copy of his Virginia motor vehicle registration, which was issued on August 4, 2008, and which bore the same "Southwood Pkwy" address.  (*Id.*)  The Policy also contained a section entitled "8. Important Notices," which included, *inter alia*, a clause stating in pertinent part: "I agree that the coverage provided under this application or any policy shall be null and void if such information is false or misleading or

would materially affect acceptance or the rating of the risk by the company." (*Id.*)  There is no record of Garcia's signing a separate insurance acknowledgment form—though OHS asserts he must have been given one, as it was company policy at the time to have all applicants do so. Moreover, Garcia did not separately initial a section on the top of page three of his application,[1] pertaining to the voidance of such policy in the event of a misstatement.

According to Seminole Trail Management ("Seminole"), the organization owning and maintaining the Southwood property, during the period in which Garcia claims he was a Virginia resident, the lessee of the listed apartment was non-party Josefina Garcia.  In an examination taken prior to the commencement of the instant action, Garcia described Josefina as his cousin. However, Josefina moved out of the apartment on September 13, 2010, and was not deposed in connection with this lawsuit.  Seminole's custodian of records stated that the organization had no record of Garcia's presence at the Southwood property.  Notably, Seminole has a policy requiring all Southwood tenants residing in an apartment for more than a week to complete an application and notify the office.  Additionally, motor vehicles parked at the Southwood property, from 2007-2008, were required to have residency stickers or a visitor's pass—without which they are towed.  However, there are public roads surrounding the apartment complex where parking may allegedly be found.

During various periods in the years 2006, 2008, and 2009, Garcia was employed by one Gregory Melomo ("Melomo"), and worked for Melomo's contracting business, G. Melomo, Inc.,

---

[1] The statement that was to be initialed, but was not in Garcia's case, reads as follows:

> I certify that this application lists all drivers in or outside of the household, including children over the age of 14, away from home or in college, who operate the insured vehicle(s) on a regular basis. I understand that the company has the right to deny claims if the information on this application has been materially misrepresented so as to affect the acceptance or the rating of the risk by the company.

which is located at 3 Eastern Avenue, Brentwood, New York 11717.  According to Melomo's

records, which are included as exhibits to the parties' submissions, throughout 2006, Garcia

worked on average 26 hours per week for the company.  Additionally, from April 2008 through

December 2008, Garcia also worked for Melomo, Inc.  From April 2008 through August 1, 2008,

it appears that Garcia worked 33.3 hours per week.  Garcia did not receive pay on August 8,

2008, suggesting that he did not work the week of August 1, 2008—corresponding to his

Virginia DMV record and his insurance application, which are dated August 4, 2008.  Melomo's

records show that Garcia worked seven more weeks for Melomo, Inc. after August 1, 2008,

working on average 33.3 hours per week.  Neither the Commonwealth of Virginia nor the State

of New York has records of any individual tax returns filed by Garcia.

　　　The events giving rise to the instant action occurred on or around August 23, 2008 in

New York State.  At that time, Garcia was involved in an automobile accident with Coronel,

Castro, Soto, and the Appelts.  The accident included three vehicles; according to the police

report, Garcia's car collided with another vehicle, and in turn, the collision hit a third car stopped

at a red light.  According to Garcia, his car was totaled as a result of the accident.  In December

2008, Coronel brought suit to recover from injuries associated with this accident in New York

Supreme Court for Nassau County.  As a result, liability claims were asserted against ASI.  In

early 2009, ASI informed Garcia that his policy was declared "null and void" *ab initio* as a result

of his material misrepresentation of his living and garaging situation—namely, that he was not in

fact living in the Southwood property, nor was he a Virginia resident, as he stated on his policy

application.[2]

---

[2] In a letter to Garcia dated January 29, 2009, ASI stated:

　　　Policy 03-145459-00 has been declared null and void 'ab initio'
　　　(from inception) because of material misrepresentation.  At the

### B.      Procedural Background

ASI filed its Complaint in this action in October 2010 in the Eastern District of Virginia. (Complaint, Dkt. No. 1 ("Compl.").)  During the course of the litigation in Virginia, several individuals were terminated as parties to the action.  However, upon the case's transfer to the Southern District of New York, in July 2011, these parties were re-served and again became part of the litigation.  In May 2012, ASI moved for default against Coronel and Garcia, who have not, to date, appeared in the New York litigation.  That same month, ASI moved for summary judgment against all Defendants, seeking a declaration that the Policy is void *ab initio* and consequently, that ASI owes no coverage or defense duties or benefits to any individual or entity associated with the damages stemming from the underlying automobile accident.

## II.      Legal Standard

### A.      Summary Judgment

A court appropriately grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  While a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor when determining whether a genuine dispute of material fact exists, s*ee Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

time you purchased this policy you failed to disclose that you garaged the vehicle at a different address than the one you reported on the policy and application.  At that time, had you disclosed your proper address, [ASI] would not have honored your application due to the fact [ASI] is not writing policies in the State of New York.

(Memorandum of Law in Opposition, Dkt. No. 78 ("Appelt Opp."), Ex. J.)

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted) (emphasis in original). Importantly, a court's role at the summary judgment stage is not to weigh credibility, but rather, to determine, construing the facts in the light most favorable to the non-movant, whether a reasonable jury could find for the non-moving party. *See St. Pierre v. Dyer*, 208 F.3d 394, 405 (2d Cir. 2000) ("We note that although the district court termed St. Pierre's submissions 'self-serving,' the self-serving nature of a witness's statements goes not to their admissibility but to their weight. The weighing of St. Pierre's evidence is a matter for the finder of fact at trial; it was not the prerogative of the court on a motion for summary judgment." (internal citation omitted)). Moreover, "A fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).

     **B.**    **Choice of Law**

     Federal courts sitting in diversity apply the choice of law rules of their forum state. *See Travelers Ins. Co. v. 633 Third Assoc.*, 14 F.3d 114, 119 (2d Cir. 1994) ("Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues."). In New York, to determine whether to conduct a choice of law analysis, a court must first "determine whether there is an actual conflict between the laws of the jurisdictions involved." 28 N.Y. Prac., Contract Law § 8:4. Where there is no conflict between the jurisdictions, a determination of which law will apply is unnecessary. *Id.* Thus, as the parties disagree as to whether New York or Virginia law should apply in interpreting the validity

of the Policy, this Court must first examine (1) whether a conflict of laws exists; and (2) if so, which law should apply under New York State's choice of law rules.

1.     **New York Law**

New York Vehicle and Traffic Law provides that "[n]o contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy." N.Y.Veh. & Traf. L. § 313.1(a). "New York courts hold this provision to prohibit rescission of auto insurance policies *ab initio*, even when the policyholder made fraudulent misrepresentations of material issues in obtaining the policy." *Am. Centennial Ins. Co. v. Sinkler*, 903 F. Supp. 408, 410-11 (E.D.N.Y. 1995) (Weinstein, J.). Put another way, New York courts have read its laws establishing compulsory automobile insurance as eliminating insurers' common law right of rescission for fraud or misrepresentation, with the minor exception of notice pursuant to statute. *Id.*

2.     **Virginia Law**

In contrast, Virginia's Code provides in pertinent part: "No statement in an application [for an insurance policy] . . . made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue." Va. Code Ann. § 38.2-309. Virginia courts have interpreted this statute to "require an insurance company contesting a claim on the basis of an insured's alleged misrepresentation to show, by clear proof, two facts": namely, "(1) that the statement on the application was untrue; and (2) that the insurance company's reliance on the false statement was material to the company's decision to undertake the risk and issue the policy." *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38, 42, 540

7

S.E.2d 491 (2001).  In the summary judgment context, "[w]hether a misrepresentation was made, and the terms on which it was made, is ordinarily a question of fact decided by the jury," *Banner Life Ins. Co. v. Noel*, 861 F. Supp. 2d 701, 710-11 (E.D. Va. 2012) *aff'd*, 12-1329, 2013 WL 221650 (4th Cir. Jan. 22, 2013); "[n]onetheless, if the record clearly shows that the insured gave statements that were not true and correct to the best of the insured's knowledge and belief, where asked to do so, then the Court may resolve the question as a matter of law."  *Great Am. Ins. Co. v. Gross*, No. 3:05 Civ. 159, 2008 WL 376263, at *5 (E.D. Va. Feb. 11, 2008).  Moreover, "when . . . a misrepresentation is proved, its materiality is a question of law for the court." *Harrell v. North Carolina Mut. Life Ins. Co.*, 215 Va. 829, 832, 213 S.E.2d 792 (1975).  A fact is material to an insurance company's risk if it "would reasonably influence the company's decision whether or not to issue a policy."  *Mut. of Omaha Ins. Co. v. Echols*, 207 Va. 949, 954, 154 S.E.2d 169 (1967).  Similarly, "[a] fact is also material to the risk if the insurer would have issued the policy on different terms, postponed issuance of the policy, or declined to issue the policy at all."  *Banner*, 861 F. Supp. 2d at 712 (internal citations omitted).

### 3.    Choice of Law Analysis

Unquestionably, New York and Virginia advance conflicting approaches to the rescission of insurance contracts.  Thus, this Court must determine which law should apply to the interpretation of the Policy.  When choice-of-law analysis is necessary in analyzing a contract, New York courts engage in a "center of gravity" or "grouping of contacts" examination.  28 N.Y. Prac., Contract Law § 8:4.  Pursuant to this test, a court will apply the law of the place possessing the most "significant contacts" with the contract or dispute.  Thus, the "place of the making or performing of the contract," while instructive, is not necessarily conclusive.  *Id.* Additionally, while "contract cases do not call for use of the interest analysis employed in tort

cases, the respective governmental interests of the possibly applicable jurisdictions should be considered." *Id.*  Public policy may also play a role in the court's analysis, providing "the policies underlying the conflicting laws reflect strong governmental interests and [the forum state's] nexus with the case is substantial enough that applying another law would threaten public policy of the state." *Id.*  The Restatement (Second) of Conflict of Laws also provides that aside from general contract principles, "where liability insurance contracts are concerned, the applicable law is 'the local law of the state which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . .'" *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 318, 642 N.E.2d 1065 (Ct. App. 1994) (quoting Restatement (Second) of Conflict of Laws § 193).

"Many state courts applying a center of gravity test have found that the law of the state where the contact was made governed because that state had the most significant relation to the dispute." *Sinkler*, 903 F. Supp. at 413.  Here, the Policy was issued in Virginia, by a Virginia-based agent of ASI.  Moreover, the garaging and home addresses of the insured were listed as a Virginia residence.  Additionally, OHS/ASI issued this particular automobile policy only to Virginia residents, meaning that the risk against which the insurer was intending to protect was a risk associated with those residing, and garaging their vehicles, in Virginia.  Admittedly, in similar circumstances, the New York Supreme Court has found that New York's choice-of-law principles can require an application of New York law in determining whether coverage should be denied.  *Id; see also Allstate Ins. Co. v. David Sullam,* 76 Misc. 2d 87, 349 N.Y.S.2d 550 (N.Y. 1973).  In *Sullam*, both the drivers and passengers involved in the automobile accident at issue were New York residents, and the accident occurred in New York.  *Sullam*, 349 N.Y.S.2d

at 562.  Despite the fact that the insurance policy was issued in Massachusetts, the *Sullam* court recognized New York's powerful public policy interest in prohibiting rescission, especially as compared to Massachusetts' interests in permitting rescission where an accident occurred outside of Massachusetts.  *Id.* at 564-65.  However, the *Sullam* court's holding rested not on such policy considerations, but rather on an estoppel rationale, as the insurance company had failed to "investigate and heed clear-cut warnings of application misstatements," which "effectively estop[ped] it [] from using those misstatements to void the policy."  *Id.* at 566.  Thus, as Judge Weinstein determined in *Sinkler*, "*Sullam* does not require that tort issues dominate the analysis in third person cases," nor "did its analysis ultimately turn on New York's provision governing *ab initio* rescission."  *Sinkler*, 903 F. Supp. at 413.

Here, as in *Sinkler*, "[v]iewed as a contracts problem, New York's choice-of-law principles would heavily favor application of [another state's] law."  *Id.*  Geico contends that New York Law regarding rescission should apply, because the legal doctrine of Virginia, permitting rescission of insurance contracts, is "offensive to the policy of New York."  (Geico Affirmation in Opposition, Dkt. No. 76 ("Geico Opp."), at 1 (citing *Sullam*, 349 N.Y.S.2d 550).)  However, this approach ignores the circumstances of the contract's formation—all which occurred in Virginia—and the realities of a conclusion that would "effectively undermine" Virginia's interests by burdening Virginia insurers with the same duty faced by New York companies to "uncover misrepresentations."  *Sinkler*, 903 F. Supp. at 414.  To hold all Virginia insurers to the standard required by New York law would ignore the principles of comity that are central to choice-of-law analysis.  And while it is true that New York law seeks to hold New York insurers accountable for misrepresentations they fail to discover at an insurance contract's inception, that policy, while a valid one, should not serve to increase costs for insurers in other

10

states, whose laws do not subject them to the same burden.  *Accord In the Matter of Eagle Ins. Co. v. Singletary*, 279 A.D.2d 56, 60, 717 N.Y.S.2d 351 (2d Dep't 2000) ("In sum, on the facts presented, New York's governmental interests, when balanced against Virginia's significant contacts with the contract and legitimate governmental interest in protecting its honest policyholders from bearing the burden of paying claims incurred by dishonest policyholders, is not sufficiently compelling to warrant the application of New York law.  Thus, the application of Virginia law is proper . . . ." (internal citation omitted)).

**III.    The Merits**

Having determined that Virginia law applies, this Court must now turn to the gravamen of the parties' dispute: namely, whether ASI may rescind the Policy in light of Garcia's alleged material misrepresentation.

**A.    Falsity**

"Under Virginia law, an insured is obligated to answer an application truthfully and fully to give the insurer the opportunity to make its own inquiry and determine whether to undertake the risk." *Carolina Cas. Ins. Co. v. Draper & Goldberg, P.L.L.C.*, 138 Fed. Appx. 542, 547 (4th Cir. 2005).  Ordinarily, the burden is on the insurer to prove the falsity of a given statement by "clear proof."  *Banner*, 861 F. Supp. 2d at 711.  However, where a policy application contains a clause stating that the answers are "correct to the best of [the insured's] knowledge," the burden on the insurer increases from clear proof to "clear proof that the answer is *[k]nowingly* false." *Old Rep. Life Ins. Co. v. Bales*, 213 Va. 771, 772-73, 195 S.E.2d 854 (1973) (emphasis added). As discussed, "summary judgment is generally inappropriate when motive, intent or state of mind is material."  *Parkerson v. Fed. Home Life Ins. Co.*, 797 F. Supp. 1308, 1315 (E.D. Va. 1992).  However, even in the state-of-mind context, where the movant has sufficiently

demonstrated that there is no triable issue of fact, a court may nonetheless grant summary judgment.  "Accordingly, it is the duty of the courts to determine, from the record the parties have presented for decision and according to the current rules governing the respective duties of the moving and the non-moving parties, whether summary judgment is appropriate."  *Id.*

The Policy undisputedly includes a recitation that the insured "declare[s] to the best of [his] knowledge and belief, that all of the foregoing statements are true . . . ."  (Rodriguez Dep., Ex. 1, at 3.)  Thus, ASI must offer clear proof that Garcia's residency and garaging representation were knowingly false when made in order to prevail on the falsity prong of Virginia's rescission requirements.  Defendants contend that since Garcia testified under oath that he resided at the Southwood property in Richmond, Virginia until August 20, 2008, having lived there for between six and twelve months, prior to contracting with ASI, his residency statement could not have been knowingly false.  (*See, e.g.*, Geico Opp. at 3; Appelt Opp. at 4 ("ASI has not carried its burden in that regard because it does not even allege, no less show, that Garcia recognized that his representations were untrue.").)  According to the Appelts, "given that Garcia's New York employment ended at or about the same time he procured coverage from ASI, he may have well understood himself to be a Virginia resident on August 4, 2008, when he signed the application."  (Appelt Opp. at 4.)  Defendants' assertions are belied by the record.

First, the pay stubs submitted by Melomo reveal that Garcia worked for Melomo, Inc. approximately 33.3 hours per week, nearly every week from April 2008 through August 2008, and then sporadically after that, from September 2008 to December 2008.  There is no conceivable way that Garcia could have worked the documented hours from April 2008 through August 2008 for Melomo, Inc. in New York and have legitimately considered himself a Virginia resident during those five months.  Moreover, as ASI notes (ASI Mem., Ex. 5), Virginia and

12

New York are hundreds of miles apart; thus, Garcia could not have been a commuter.  While Garcia, in his examination, claimed to have lived in the Southwood property for six months prior to the accident, explaining that he moved to New York shortly after purchasing the Policy (Appelt Opp., Ex. F ("Garcia Ex."), at 12:15-22;13:11-12), Garcia's timeline does not correspond to the reality of Melomo, Inc.'s records.

And while the Appelts highlight that Garcia's New York work became sporadic after he purchased the Policy, allegedly underscoring the likelihood that he believed himself to be a Virginia resident at the time he signed the Policy, this interpretation of the narrative again is belied by the record.  For example, Garcia himself stated that at the time of the accident he was a *New York* resident, living in Brentwood.  Therefore, although the Melomo, Inc. employment was indeed sporadic in the months after the accident, and did not rise to the level of 33.3 hours per week, at the time, Garcia stated that he was living in Brentwood.  Moreover, in the two weeks directly following the Policy purchase, Garcia worked a total of 66.6 hours in New York for Melomo, Inc.—33.3 hours during the week of August 15, 2008 and 33.3 hours during the week of August 22, 2008.  Although Garcia claims to have lived with his cousin in Richmond prior to the accident, there is no way in which this representation could be conceived as accurate, given that during those four months, Garcia was spending an average of 33 hours per week working for Melomo, Inc.—a fact substantiated by Melomo, Inc.'s undisputed records.  While the Appelts are correct that Garcia need not have been "physically present in Virginia every day to be a resident" (Appelt Opp. at 4-5.), according to the Melomo, Inc. records, he spent far more than "substantial time" in New York, but rather resided and worked there for months at a time.  *Cf. Towson v. Towson*, 102 S.E. 48, 51 (Va. 1920) (explaining that one's residence is more context-

specific than the concept of one's domicile, the latter of which requires an intent to remain in a single place and make it one's home).

While state of mind is generally a matter left to the jury, here, no reasonable juror could find that Garcia conceived of himself as a Virginia resident living and garaging at the Southwood property, when he had worked full-time, every week during the four months prior, in New York State, and when he admittedly moved to Long Island directly following the acquisition of the Policy.  Accordingly, ASI has shown by clear proof that Garcia's description of his garaging and residency address was knowingly false when made.

**B.      Materiality**

Even where the falsity of a representation is established, an insurer may not rescind a policy under Virginia law unless the misrepresentation was "material to the risk when assumed and was untrue."  Va. Code Ann. § 38.2-309.  Where falsity of a statement is established, materiality is appropriately a question of law for the court.  *Harrell*, 215 Va. at 832.  As discussed, a fact that can be said to "reasonably influence the company's decision whether or not to issue a policy" is considered material.  *Echols*, 207 Va. at 953-54.  Here, it is abundantly clear from the record that OHS would not have issued the ASI policy to Garcia had he disclosed that he had been living and working in New York State for the four months prior to the execution of the Policy, and planned to reside in Long Island, New York in the months thereafter.  (*See* Rodriguez Dep., at 14:23-15:5 (explaining that had Garcia given any indication that he did not reside in Virginia at the time of the Policy's purchase, OHS would have informed him that ASI does not write such automobile policies for vehicles garaged in New York); *id.* at 17:1-18:25 (noting that the underwriter guidelines to which OHS had to adhere when issuing policies for ASI required that an applicant reside in Virginia for ten months out of the year in order to receive

automobile insurance of the kind described in the Policy).)  To hold that the location of Garcia's residence and garage was immaterial to OHS's decision to grant him coverage would be antithetical to the very concept of materiality, which requires no more than a fact of reasonably likely influence.  Here, ASI has met its burden in showing that the Policy never would have been issued absent Garcia's representation that he was garaging and residing at the Virginia property. *See Minnesota Lawyers Mut. Ins. Co. v. Hancock*, 600 F. Supp. 2d 702, 708-09 (E.D. Va. 2009) (finding materiality where affidavits established that the plaintiff insurance company would not have issued the policy in question had the truth been known or misrepresentations not been made on the part of the defendants).

The Appelts contend that "ASI cannot demonstrate reliance because the retail broker, OHS, bound Garcia's coverage on August 4, 2008 at 4:49 p.m., before the application was even signed by him."  (Appelt Opp. at 6.)  The record indeed reflects that the Policy status changed from "Pending" to "Bound" and later, "Active" at 4:59 p.m. on August 4, 2008 (Appelt Opp., Ex. A, at 2), though it is far less clear that Garcia had not yet signed the application at this point. (*Id.*, Ex. B, at 2.)  Regardless of the exact timing of Garcia's signature, it is evident that before the Policy was bound, Garcia had given his residency and garaging information—which is typed into the "General Information" fields of the Policy's application.  (*Id.* at 1)  According to Rodriguez, OHS is a Virginia company, and pursuant to the underwriter's obligation, which dictated the parameters of its ASI policy issuance, automobile insurance policies, such as the one issued to Garcia, were provided only to Virginia residents.  And while conclusory assertions by company employees will not amount to clear proof of materiality (Appelt Opp. at 6), where, as here, it is evident from numerous employee affidavits, and a manger's deposition, that a

company has particular parameters within which it *must* operate when issuing policies, a summary judgment finding on the materiality prong is appropriate.

Accordingly, having shown clear proof of both falsity and materiality beyond genuine dispute, ASI is permitted to rescind the Policy *ab initio*.

### C.   Default Judgment

ASI has also moved, pursuant to Rule 55 of the Federal Rules of Civil Procedure, for default judgment against Garcia and Coronel, who have not, to date, appeared in this lawsuit. The Clerk of Court of the United States District Court for the Southern District of New York entered certificates of default against Coronel and Garcia on April 19, 2012.  (*See* Clerk's Certificates of Default, Dkt. Nos. 61, 62, 63.)  Pursuant to this Court's individual practices, ASI obtained Certificates of Default for the non-appearing parties and attempted to serve its motion for default judgment, along with the Complaint, on the defaulting individuals.  In its filing with this Court, ASI included two notarized affidavits of due diligence, which detailed the attempts to serve these papers on Garcia and Coronel.  (*See* Motion for Default Judgment, Dkt. No. 68.) Though service of the default papers remains unexecuted, the affidavits of due diligence reflect a reasonable attempt to effect service.  Moreover, Garcia and Coronel were originally served in this lawsuit (*see* Affidavits of Service, Dkt. Nos. 27, 28, 30), and have had myriad opportunities over the course of more than two years to appear.  Accordingly, ASI's motion for default judgment is granted.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED, and Plaintiff's motion for default judgment against Ferdy Reyes Garcia and Abel Coronel is

GRANTED.  The Clerk of Court is directed to close the motions at docket entry numbers 68 and

71.

  SO ORDERED.

Dated: New York, New York
   March 8, 2013

           J. PAUL OETKEN
        United States District Judge